IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Roman Green,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et. al.,<br><br>　　　　Respondents. | No. CV 16-0454-PHX-DGC (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On March 2, 2016, Petitioner Anthony Roman Green, an inmate currently incarcerated at the Arizona Department of Corrections ("ADC"), Eyman Complex, in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2241, construed by the Court as pursuant to 28 U.S.C. §2254, (Doc. 7), claiming that his Fourteenth Amendment right to due process was violated by ADC disciplinary proceedings that resulted in a finding that Petitioner had engaged in a prison riot, and the imposition of a loss of good time credit and change in prison security risk classification. (Doc. 2.) On June 10, 2016, Respondents filed their Answer urging the Court to deny Petitioner's habeas petition on the merits. (Doc. 14.) On June 21, 2016, Petitioner filed a Reply. (Doc. 15.)

**BACKGROUND**

ADC records reflect that on December 2, 2014, an inmate riot occurred at the West

Outdoor Recreation Yard at the ASPC-Eyman Special Management Unit 1. (Significant Incident Report, Exh. A[1].) Two inmates began fighting and then additional inmates joined in. In the end, four inmates ended up being assaulted by 19 inmates in the recreation yard. (Exh. C.) The 19 inmates were of various races other than African American, and the 4 inmates assaulted by the group were African American. (Id.) After inmates refused the ADC guards' directions to stop, chemical spray was deployed. (Exh. A.) Eventually, the guards got control of the situation and the incident was concluded. (Id.) Investigators with ADC used interviews, review of videos and knuckle and body checks to identify the inmates involved. (Exhs. A, C.) Petitioner was identified as one of the 19 involved in the fighting and was transferred to a housing assignment at the Florence Complex-Central Unit Restrictive Status Housing and Browning Green. (Id.)

Green was reassigned to different housing in pre-hearing detention pursuant to Department Order ("DO") 803.02 1.1, which provides:

> The unit Deputy warden may place an inmate in pre-hearing detention at a Complex Detention Unit (CDU) when charged with Class A, B or C violations and an investigation is required using the Assignment to Investigative Detention/Form No. 2A, Form 803-7. Inmates shall receive verbal notification of the reasons for detention at the time of their initial placement immediately following the rule violation.

(Exh. J at 2.)

Petitioner was ultimately charged with Participating in a Riot, which is a Class A disciplinary charge, comparable to a felony. (Doc. 14-2 at 2, ¶¶ 3, 4.) Petitioner was notified of the charge by the Disciplinary Coordinator ("DC") Sergeant Dance. (Id. at 3; Doc. 14-1 at 8, ¶ 10.) As required by DO 803.04, 1.1.1.1 and 1.1.1.3, the DC must obtain the accused inmate's statement on the Discipline Investigative Report, Form 803-8 and if the inmate has requested witnesses, the DC must document the request on Form 802-8, the Inmate Discipline - Witness Request/Statement/Refusal. (Doc. 14-1 at 5.) DC Sergeant Dance notified Petitioner of the charge and gave him a copy of the Inmate Disciplinary Report on

---

[1] All exhibits referenced herein are exhibits attached to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. 14.)

1 December 4, 2014. (Doc. 14-2 at 3, ¶ 10; Exhs. B, C.) Petitioner did not sign the report as he was restrained, but pled not guilty and requested a hearing with the DHO. (Exh. B; Doc. 14-2 at 4, ¶¶ 13, 14.) Petitioner declined staff assistance. (Exh. C.) Petitioner was directed to submit Witness Statements within 48 hours. (Exh. B.) The purpose of the witness statements procedure is for the inmate to write on the form a summary of what the witness will say, and questions he wants the witness to be asked - the DC will then interview the witness(es) and request that the witness complete either a statement or a refusal. (Doc. 14-1 at 31; Doc. 14-2 at 4, 5, ¶¶ 14, 15.) On January 13, 2015, Petitioner submitted a letter to CO III Reyes requesting witness forms. (Doc. 15 at 18.) On January 28, 2015, Petitioner was provided witness statement forms. (Id. at 19.)

Pursuant to DO 803.07, 1.4, the disciplinary hearing is to occur within 7 working days of a violation unless the DC explains in a Postponement Memorandum the reason a continuance is needed and the warden, deputy warden or designee approves a continuance. (14-2 at 6, ¶ 20.) Petitioner's hearing was postponed two times based upon 1) the need to complete the investigation, 2) the Disciplinary Hearing Officer's ("DHO")/DC's caseload was backlogged; and 3) there was a conflict with the DHO's schedule. (Exhs. D, E.) Petitioner's hearing took place on January 30, 2016, within the time frame of the postponements. (Doc. 14-2 at 7, ¶ 21.)

Although Petitioner had received witness statement forms prior to the hearing, he requested that he be permitted to call witnesses at the hearing. (Doc. 14-2 at 5, ¶ 16.) DHO Schitter denied the request as Petitioner had not obtained witness statements in advance. (Id.) Petitioner was given the opportunity to tell the DHO his side of the story. (Id. at ¶ 17.) DHO Schitter recorded on the Result of Disciplinary hearing form under "Witness Statements Used" that none of the witness statement forms had been requested, none of these forms had been issued and none were used. (Doc. 14-2 at 4, ¶ 14.) DHO Schitter found Petitioner guilty after consideration of the disciplinary report, the information reports, and the investigative reports, and imposed as a penalty of 49 days loss of good time credit, 10 days disciplinary detention, 180 days Parole Class III, 40 hours extra duty and 30 days loss

- 3 -

1 of privilege. (Exh. F; Doc. 14-2 at 5, ¶ 18.) Petitioner signed the acknowledgment that he
2 received a copy of the Result of Disciplinary Hearing, and also wrote "Yes requested forms
3 never received," in the "Witness Statement Denied" box, where the name of a denied witness
4 would be written. (Exh. F.) DHO Schitter crossed out the comment and placed his initials
5 "BS" besides the comment. (Id.) He did this because Petitioner's comment that he had
6 requested witness statement forms, but never received them, was not true. (Doc. 14-2 at 5,
7 ¶¶ 16, 17.)

8 On January 30, 2015, Petitioner filed a timely Level One appeal to the Warden of the
9 prison where he was housed, alleging that he was denied his due process rights. A lengthy
10 delay occurred in responding to Petitioner's appeal as evidenced by an email sent from the
11 ADC Central Office, Disciplinary Appeals on May 13, 2015, to the Disciplinary Coordinator
12 on the case, requesting a reason for the delay. (Exh. H.) The Disciplinary Coordinator
13 responded that, even though she had walked the paperwork to SMUI, she was later told they
14 never received it. (Id.)

15 The Deputy Warden denied Petitioner's appeal on May 7, 2015, finding no due
16 process violation, in that the postponement of the hearing was appropriate, Petitioner was
17 notified of the charge as well as the evidence to be presented, he was given over 48 hours to
18 prepare for the hearing and the opportunity at the hearing to provide his version of the events.
19 (Exh. H.) Petitioner received a copy of the decision on May 8, 2015. (Id.) On May 11,
20 2015, Petitioner filed a Step II appeal of the Deputy Warden's decision. (Exh. G.) He added
21 a claim that his due process rights were violated by the extended delay in the ruling on his
22 Step I appeal. (Id.) On June 2, 2015, Petitioner's Step II appeal was denied, affirming the
23 results of the disciplinary hearing. (Exh. I.)

24 Petitioner filed his habeas petition on February 17, 2016, claiming that his due process
25 and liberty interests under the United States Constitution were violated when he was not
26 afforded, during the disciplinary hearing (1) the right to participate or speak on his behalf,
27 (2) confirm the evidence against him, (3) denied the right to call witnesses, and when his
28 Step I appeal was decided outside the time frames extablished by DO 803.09. (Doc. 2 at 4.)

**ARGUMENT**

I.    <u>Standard.</u>

Federal prisoners have a statutory right to good time credits. <u>See</u> 18 U.S.C. §2634. The Due Process Clause of the Fourteenth Amendment extends to discipline hearings at which an inmate may lose good conduct sentence credits to which he is otherwise entitled. <u>Wolff v. McConnell</u>, 418 U.S. 539, 557 (1974). Although the Supreme Court, in <u>Wolff</u>, held that the full panoply of due process rights do not apply in the prison discipline context, an inmate subject to disciplinary sanctions that can impact a protected liberty interest must be afforded: 1) 24-hour advanced notice of the charge(s) against him; 2) a written statement by the fact finder as to the evidence relied on and the reasons for the action; 3) an opportunity to call witnesses and present documentary evidence; 4) assistance at the hearing if he is illiterate or if the matter is complex; and, 5) an impartial fact finder. <u>Wolff</u>, 418 U.S. at 563-72.

"The requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary [tribunal]." <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985). "Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." <u>Id.</u> Under that standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u>, at 455-456. The standard is "minimally stringent." <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence standard" does not require a court to examine the entire disciplinary record, perform an independent assessment of credibility of witnesses or re-weigh the evidence. <u>Hill</u>, 472 U.S. at 455. In reviewing disciplinary records, courts must defer to prison officials' expert judgments in their "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." <u>Norwood v. Vance</u>, 591 F.3d 1062, 1066 (9th Cir. 2010) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979)).

A failure to meet a prison guideline regarding a disciplinary hearing does not alone constitute a denial of due process. Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (overruled on other grounds, Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016)). Even if the regulations stated that a prisoner was entitled to a hearing within less than eight days, the [prisons]'s failure to meet that guideline would not alone constitute a denial of due process." Id. A showing of prejudice is generally required. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (state habeas proceedings); Smith v. United States Parole Commission, 875 F.2d 1361, 1368-69 (9th Cir. 1989) (requiring a petitioner in a 2241 proceedings who challenged the government's delayed compliance with a procedural regulation concerning the appointment of counsel before a record review in parole revocation proceedings to demonstrate prejudice to be entitled to habeas relief); Standlee v. Rhay, 557 F.2d 1303, 1307-08 (9th Cir. 1977) (the burden is on a parolee to demonstrate that failure to permit a witness's live testimony at a revocation hearing was so prejudicial as to violate due process); Powell v. Coughlin, 953 F.2d 744, 751 (2nd Cir. 1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

II.     Petitioner's Due Process Claim.

Petitioner claims that he was denied due process in that he "was not afforded participation [in his disciplinary hearing] besides to be present, [denied] the right to speak on [his] behalf, [denied the right to] confirm existence of evidence against [him]," and "the safeguard to call a witness on [his] behalf multiple times throughout the process," and the right to have his appeal decided in a timely manner. (Doc. 2 at 4.)

The record reflects that Petitioner was afforded his right to participate in the disciplinary process. He was given notice of the charge against him by DC Dance and the reason for his detention, who provided a copy of the charge to him and offered to give him witness statement forms. Petitioner declined staff representation. Petitioner did not request any witness forms at that time. Several weeks later, on January 15, 2015, he sent a request in for the witness forms, and the record reflects that on January 28, 2015, witness forms were

provided to him.  Although Petitioner requested to call witnesses at the hearing, DHO Schitter denied the request as Petitioner had not requested witness forms or submitted witness statements in advance of the hearing. Although it appears DHO Schitter was incorrect in stating that Petitioner had not requested or received witness forms, Petitioner does not dispute that none were submitted by him at the hearing. Even if DHO Schitter's notation was inaccurate, Petitioner has never identified the witnesses he claims he was deprived of calling, or what they would say. Thus, he can not demonstrate prejudice by the error.  Also, Petitioner was given the opportunity at the disciplinary hearing to tell his side of the story, as documented by DHO Schitter.  The DHO's finding was also based upon "some evidence," that is, his review of the disciplinary report, information reports and investigation reports.

Petitioner also complains that his disciplinary hearing was improperly postponed, and his appeal was not decided in a timely manner.  Although he is correct as to his Step I appeal, he can demonstrate no prejudice occasioned by the delay.  The sanction imposed by DHO Schitter began running on January 30, the day of Petitioner's disciplinary hearing.  The decision affirming the DHO's findings was rendered on May 7, 2015.  None of the sanctions were affected by the delay however - said another way, had the appeal been decided on time, the sanctions would be the same.  Additionally, Petitioner was not eligible to apply for consideration of a return of the 49 days of earned release credits revoked, and the ERC he did not earn during the 180-day Parole Class III period, until January 30, 2016, long after his first level appeal was decided on May 7, 2014, and his second level appeal on June 2, 2015. (Exh. K at 2.)

The postponements of Petitioner's disciplinary hearing did not deprive him of due process, as they were in accordance with Department Orders that permitted continuances for good cause.  In fact, DC Dance applied for and was granted two postponements by the Deputy Warden.  In any event, Petitioner does not demonstrate any prejudice by the delay of his hearing from December 11, 2015 to January 30, 2015.

## CONCLUSION

This Court finds that sufficient evidence supported the DHO's finding that Petitioner

- 7 -

had engaged in the prohibited act, and that Petitioner's due process rights were not abridged as claimed by Petitioner, and even if there was error in the appeals process, Petitioner suffered no prejudice. The Court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 2), construed by the Court as brought pursuant to 28 U.S.C. §2254, be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 25th day of October, 2016.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge